## McWILLIAMS v. DELAWARE, L. & W. R. CO.

### (Circuit Court of Appeals, Second Circuit.   June 14, 1913.)

### No. 260.

COLLISION (§ 66*)—MEETING TOWS—NEGLIGENCE OF TUG.

   Allegations of fault on the part of a tug whose tow came into collision with that of a meeting tug *held* not sustained by the evidence either on the ground that the length of her tow was the cause of the collision or that she did not give sufficient room in passing.

   [Ed. Note.—For other cases, see Collision, Cent. Dig. § 84; Dec. Dig. § 66.*

   Collision with or between towing vessels and vessels in tow, see note to The John Englis, 100 C. C. A. 581.]

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty for collision by Owen J. McWilliams against the Delaware, Lackawanna & Western Railroad Company.   Decree for respondent, and libelant appeals.   Affirmed.

The following is the opinion of the District Court, by Hand, District Judge:

This is a libel in admiralty in personam against the Delaware, Lackawanna & Western Railroad Company on behalf of the owner of the barges Baxter and Vaux for a collision between those barges and the barge Pohatkong at that time in tow of the tug Lackawanna. The collision took place on the 25th day of August, 1907, at about 11:30 in the morning. At that time there was a fresh northwesterly breeze and the tide was substantially slack. The scows Baxter and Vaux were in tow of the steamtug Zouave, which was coming from Bridgeport and shortly before the accident was about halfway between the Stepping Stone Light and Throggs Neck. The Zouave had in tow at that time 13 light barges which were bunched in four tiers; the first three tiers being four boats abreast and the fourth tier consisting of one boat on the port side of the port barge of the third tier. Between the tug and the first tier was a hawser of some 60 fathoms in length. The barges drew substantially 2 or 3 feet of water and had a freeboard under the circumstances of about 12 feet. The tug Lackawanna had come through Hell Gate with three loaded coal barges in tow. These at that time were in one tier and abreast and upon a short hawser. She wished to pick up at Hammonds Flats, which is just to the west of Throggs Neck, a fourth barge, and in order to do this she swung to the northward under a starboard wheel until she faced the tide; she then took onto the rear the fourth barge and still under a starboard wheel swung to the southward and again faced the east, which was the course on which she was bound. She then proceeded along her course, dropping off the barges upon hawsers of substantially 175 fathoms in length. She rounded Throggs Neck and had proceeded so that the second barge was about opposite the buoy off the neck when the collision occurred. At that time she had not quite full headway on all the barges, but her engines had been for some ten minutes at full speed, and the speed of the tow was probably about four miles through the water. When the tug Lackawanna had come about the length of the first hawser beyond the neck she blew one whistle, indicating that she would keep to starboard, and repeated that, but

got no answer. The Zouave continued, however, on her course, making the buoy and turning the neck as close as might be. On account of the high freeboard and light draft of the scows, these were blown off the course of the Zouave around the buoy, just how far the witnesses differ, but I prefer to accept the testimony of the captain, which is to the effect that when about opposite the buoy the scows strung off some four points or more from his course and into the channel. After rounding the buoy he went as close inshore as possible, and shortly before the accident, seeing that it was inevitable, he brought the starboard barge of his first tier almost into collision with a barge which was at the end of a dock on the west side of the neck. This did not avail him, however, and the port barge of the second tier swung into the hawser between the first and second barges of the Lackawanna's tow, broke it, and swung against the port bow of that barge, causing the damage in question. At the time when the Lackawanna, still with a bunched tow, turned to the southward to string out her tow, she saw, coming westward from down the channel, the tug Staples with some three or four barges likewise upon a long hawser. She turned and faced westward, but, being delayed by the dropping off of her barges, the Staples and her tow passed her so that, at the time the Lackawanna rounded the buoy, the tug Staples was considerably in advance of her and she was lapping the first or second of the Staples' barges. The Staples took a course some 600 or 700 feet south of the buoy, and there was ample water to the south of her in which she could have navigated had she chosen. The Lackawanna kept as close on the port hand of the Staples as safety permitted, probably not more than 100 feet away. This brought her about 500 feet from the buoy at the time she rounded the buoy. There is some controversy as to whether the barges which followed the Lackawanna succeeded in keeping off the buoy as far as the tug herself. As to that I conclude that the barges did keep at least in the wake of the tug; possibly they succeeded in making a course somewhat to the southward of the tug herself.

These being the facts, the scows charge against the tug as faults: First, the length of the tow itself. Second, that she did not keep far enough off shore. If I thought that the length of the tow in any sense contributed to the accident, I might hold the tug in fault. Further, unless I was assured affirmatively that the length of the tow had nothing to do with the collision, perhaps I should hold the tug. However, although the courts have too often condemned tows of this length, still no case has been cited which throws upon such a tow the fault arising from such length of hawser. That question, however, I need not decide, because, as I have stated, I believe that the barges at least kept in wake of the tug, and, if that be true, the length of the tow had nothing whatever to do with the collision. Indeed, if the hawsers had been shortened each by one-half, the whole length of the tow would have been divided in half on either side of the neck and the light barges would have swung into the coal barges of the Lackawanna as they did.

There remains, therefore, only the question of whether the captain of the Lackawanna should have permitted himself to take a course which brought him so near to the buoy and which would expose such a tow as that of the Zouave, navigating in a wind of that strength, to be blown against him. At the time when the captain chose to go on the port hand of the Staples' tow, and not to wait as he might for her to pass, the Staples' tow had not chosen her course in the channel itself. It is true that the captain of the Lackawanna might have inferred that the Staples' tow would probably crowd him on the shore of the neck, but I do not think he was called upon to anticipate that this would be the fact. As matter of fact, the Staples did not crowd him upon the neck so near as to cause danger. Whether he was obliged to anticipate a tow of that character might be there or not, I do not decide. I think he was not obliged to anticipate that the Staples would not give him more room to windward than he did. If so, he was not at fault in not permitting that tow to pass him. The channel is some 3,000 feet in width and there was ample room for the navigation of all the tows which in fact occupied it at the time in question.

207 F.—5

These being the only two faults which I think can be alleged against the Lackawanna with any show of success, and neither of these being in fact borne out by the testimony, I direct that the libel be dismissed.

This cause comes here upon appeal from a decree of the District Court, Southern District of New York, dismissing a libel brought to recover damages sustained by two of libelant's barges in tow of the tug Zouave in consequence of a collision with two barges in tow of respondent's tug Lackawanna. The opinion of the District Judge fully sets forth all the facts, which need not be here repeated.

James J. Macklin, of New York City (De Lagnel Berier, of New York City, of counsel), for appellant.

J. L. Seager, of New York City (Austin J. McMahon, of New York City, of counsel), for appellee.

Before LACOMBE, COXE, and WARD, Circuit Judges.

PER CURIAM. The district judge did not, as was suggested on the argument, hold that this was a case of inevitable accident; the Zouave was not brought into the case and it was not necessary to discuss the question whether her navigation was faulty.

As will be seen from the narrative of the transactions, the critical point in the courses of the respective boats was the buoy off Throggs Neck. That point was reached and passed by the Lackawanna while the Zouave was some distance to the eastward of it. The Lackawanna cleared it by 500 feet and could not have safely given a wider clearance because she had been overtaken and passed 100 feet to starboard by another tug, the Staples, with a long tow, which had not yet passed the Lackawanna. The two charges of negligence against the respondent were fully considered by Judge Hand, who held them both to be unproved.

That is the only navigation which need be considered, and since we concur in his reasoning and conclusions, the decree is affirmed, with costs.